```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LYDIAN PRIVATE BANK d/b/a
VIRTUALBANK,

                Plaintiff,

        -v-                                              No. 07 Civ. 8173 (LTS)(GWG)

RICHARD A. LEFF, et al.,

                Defendants.

-------------------------------------------------------x
```

### MEMORANDUM OPINION AND ORDER, including ORDER TO SHOW CAUSE

In this diversity action for money damages, Plaintiff Lydian Private Bank, d/b/a VirtualBank ("Plaintiff"), brings New York common law causes of action for fraud, breach of fiduciary duty, attorney malpractice and negligence,[1] against Defendant Richard Leff ("Defendant"),[2] seeking to recover approximately $1.4 million of Plaintiff's funds which were misappropriated by Defendant's brother, Steven Leff, after the funds had been entrusted into escrow accounts for the purpose of disbursement in connection with certain mortgage refinance transactions. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

Defendant moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all claims asserted against him. In addition, Defendant requests, by way of

---

[1] Plaintiff's additional claims have been dismissed pursuant to a stipulation. (See Docket Entry No. 64.)

[2] Plaintiff also brings this action against Defendants National Settlement Agency, Inc., Steven Leff, and Rachel Leff. Judgment by default has been entered against Defendants National Settlement, Inc. and Steven Leff. The action has been stayed as to Rachel Leff, who has filed for bankruptcy.

letter submitted after the motion for summary judgment was fully briefed, that the Court sanction Plaintiff and its counsel for allegedly violating, knowingly, a Protective Order signed by Magistrate Judge Gorenstein on January 14, 2008. The Court has reviewed thoroughly the parties' submissions. For the reasons that follow, Defendant's motion for summary judgment is granted, and Defendant's request for sanctions is denied.

BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff is a bank engaged in the business of mortgage lending. Steven Leff, Defendant's brother, was, at all relevant times, the president of National Settlement Agency, Inc. ("NSA"), a business that offered mortgage loan closing and settlement services. On or about May 2002, NSA and Plaintiff agreed that NSA would maintain escrow accounts for the purpose of holding deposits of Plaintiff's mortgage proceeds, and that such proceeds would be disbursed in accordance with the respective settlement statements for certain mortgage refinancing transactions (i.e., to ensure that the former mortgagee bank would be paid off and that Plaintiff would obtain a valid first lien position on the property). In or around July 2007, however, approximately $1.4 million of Plaintiff's mortgage loans, designated for several mortgage refinancing transactions and deposited into escrow accounts held by NSA, were not properly disbursed. Instead, Steven Leff diverted those funds for his own use. Steven Leff pled guilty on the basis of this conduct to federal charges of bank fraud on June 12, 2008, in the Eastern District of New York.

Defendant began his employment with NSA in 2002. At the time of his hiring and during his employment there, Defendant was aware of various less-than-sterling aspects of Steven Leff's past. Defendant knew that Steven Leff had had a dispute involving money with his wife's

grandfather. (Dep. of Richard Leff, annexed to Decl. of Charles R. Jacob III dated Jan. 20, 2009, as Ex. 1, at 9.) He knew that Steven Leff filed for personal bankruptcy in 1998. (Richard Leff Dep. at 53.) He knew that Steven Leff, who had also been a licensed lawyer, had been suspended from the practice of law in the late 1990's due to issues involving Steven Leff's handling of client money, and that NSA was founded at a time when Steven Leff was still unlicensed. (Id. at 6-8.) He heard rumors that Steven Leff had hired a manager for an affiliated company who had previously been a stripper or exotic dancer. (Id. at 40-41.) Plaintiff contends that Defendant should have disclosed this information, as well as additional details of which Defendant claims he was unaware, to it.

Plaintiff proffers the following evidence with respect to Defendant's job title and the nature and duties of his employment. According to the evidence proffered by Plaintiff, Defendant held himself out to be, and was understood by Plaintiff and others to be, general counsel for NSA. (See Decl. of Keith Nance dated Jan. 16, 2009, ¶¶ 15-16; Dep. of Arlene Oppenheimer, annexed to Jacob Decl. as Ex. 13, at 59; Dep. of Michael Gallagher, annexed to Jacob Decl. as Ex. 11, at 12, 71-72.) NSA offered Defendant as an attorney to act on behalf of Plaintiff at various closings, and his job was to "coordinate all the closings." (Gallagher Dep. at 17, 40.) On other occasions, he gave legal advice to Plaintiff's employees concerning title clearing issues and title search requirements for different counties. (Jacob Decl. Exs. 2, 6.) Defendant at one point identified himself, without reference to NSA, as the "settlement agent" for Plaintiff in connection with a written mortgage tax exemption request made to the government. (Jacob Decl. Ex. 4.) Defendant's salary doubled in relation to his past job when he was hired, and increased substantially during his tenure at NSA.[3]

---

[3] Defendant's sanctions request is focused primarily on the propriety of Plaintiff's proffers of Defendant's salary information. The Court assumes for purposes of

Michael Gallagher ("Gallagher"), who acted as a closing attorney on behalf of NSA for several transactions, testified that "the title closer would take care of paying off the loan" and ensure that the bank would have a valid first lien (Gallagher Dep. at 24), though he did not testify that Defendant was the "title closer" for any of the transactions in which money was misappropriated. Gallagher acknowledged the existence of documents, signed by Gallagher, in which it was promised that "funds [would] be disbursed" (Gallagher Dep. at 29), but there is no testimony that Defendant himself ever signed any such document. Defendant testified that NSA was responsible for the disbursements, but he did not testify that he himself was responsible. (See Richard Leff Dep. at 66 ("Q: Was one purpose of NSA handling the closings for the banks that the banks would have valid first-lien mortgages . . . once the closing was concluded?  A: NSA -- yes, NSA would do the payoffs or they would give the money to a title company to do the payoffs.").)

According to Defendant, when he learned about the embezzlement of money in July 2007 and that Steven Leff was likely involved, he contacted Steven Leff, who told him that his attorney was "dealing with it with the U.S. Attorney's office." At that point, Defendant left NSA. He did not take any steps to track down where the embezzled money actually went, nor did he believe he had any responsibility to do so. (Richard Leff Dep. at 71-72.)

DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

---

Defendant's motion for summary judgment that Plaintiff has proffered admissible evidence demonstrating the salary increase because, as explained below, even if such evidence were in the record, there would be no genuine issues of material fact.

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a <u>genuine issue for trial</u>."  <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (alteration in original)).

The elements of Plaintiff's state law claims are as follows.  A claim for fraud under New York common law consists of the following elements: (1) a material representation or omission of material fact; (2) that is false or misleading; (3) made with knowledge or reckless disregard of its falsity; (4) reliance; and (5) injury.  See <u>VTech Holdings Ltd. v. Lucent Technologies, Inc.</u>, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001) (citing cases).  The elements of a breach of duty claim are: (1) the existence of a fiduciary duty; and (2) the breach of that fiduciary duty.  See <u>Iannuzzi v. Wash. Mut. Bank</u>, No. 07-CV-964 (JFB)(WDW), 2008 WL 3978189, *8 (E.D.N.Y. Aug. 21, 2008).  "An action for legal malpractice requires proof of three essential elements: (1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages."  <u>Mendoza v. Schlossman</u>, 87 A.D.2d 606, 606-7 (2d Dep't 1982).  In some cases, a lawyer may owe duties to a nonclient that are actionable in a legal malpractice claim if his client has a fiduciary relationship with the nonclient, to the extent that action necessary to prevent or rectify the breach of a fiduciary duty owed by the client to the

nonclient falls within the scope of his representation.[4]  In order to state a claim for negligence, a plaintiff must demonstrate "(1) a duty owed by the defendant to Plaintiff, (2) a breach thereof, and (3) injury proximately resulting there from."  Solomon by Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (N.Y. 1985).

Plaintiff asserts, in connection with all or most of these state law claims, that Defendant failed to disclose various aspects of Steven Leff's past, failed to ensure the proper disbursement of the funds, and failed to remedy the harm to Plaintiff after discovering the defalcation.  There is no evidence, however, that Plaintiff ever reasonably relied on Defendant to disclose anything about Steven Leff's past.[5]  The proffered evidence indicates merely that Plaintiff

---

[4] As one court noted in In re Food Mgmt. Group, LLC, 380 B.R. 677, 708-10 (Bankr. S.D.N.Y. 2008) (citing Law Governing Lawyers § 51(4)), a lawyer owes a duty to a nonclient when and to the extent that:

> (a) the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;
> (b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud . . . ;
> (c) the nonclient is not reasonably able to protect its rights; and
> (d) such a duty would not significantly impair the performance of the lawyer's obligations to the client.

> The duty imposed by [this] rule . . . arises when the lawyer knows that appropriate action by the lawyer is necessary to prevent or mitigate a breach of the client's fiduciary duty. . . . [A]ctual knowledge by the . . . Defendants is not required to impose liability predicated on this theory.  The . . . Defendants cannot escape liability if they closed their eyes to what someone with their 'superior intelligence' would find obvious. [However, the plaintiff] cannot predicate liability . . . on the  . . . Defendants' failure to investigate facts beyond those of which they were otherwise aware.

[5] Plaintiff asserts that Defendant concealed the fact that Steven Leff had stolen $500,000 from his wife's grandfather, that Steven Leff had declared bankruptcy in the past, that he had been suspended from the practice of law due to

asked Defendant for legal advice concerning title clearing and that Defendant sought an exemption from certain mortgage taxes. No rational factfinder could construe the record as supporting an expectation by Plaintiff that Defendant would disclose any and all negative information or rumors concerning Steven Leff. The mere fact that Defendant's salary doubled upon hiring and increased substantially during his tenure also raises no reasonable inference of wrongdoing. Nor does Plaintiff point to any specific representation by Defendant concerning Steven Leff's past that would suggest that Defendant had a duty to disclose the omissions at issue. Moreover, in light of the highly attenuated relationship between the fact that Defendant failed to tell Plaintiff about Steven Leff's past financial and career troubles, none of which had anything to do with Steven Leff's apparent plan to steal Plaintiff's money, and the theft of $1.4 million of Plaintiff's funds, no rational factfinder could conclude from the record that the theft was a reasonably foreseeable result from Defendant's failure to disclose such attenuated facts.

        Plaintiff's proffers also fail to frame any genuine issue as to whether Defendant ever

---

    misappropriation of client funds, that he founded NSA while suspended from law practice, that he had engaged in "suspicious activities" such as hiring a former stripper as a manager, and that Steven Leff had engaged in other "fraudulent activities that [Defendant] would have uncovered if he had not turned a blind eye to Steven[ Leff's] actions, including commingling of client's funds entrusted to NSA." (Opp'n at 10-11.) However, the evidence proffered by Plaintiff does not establish that Defendant actually knew several of these "facts" Plaintiff contends were concealed from it, nor can any such inference be reasonably drawn from the evidence. Defendant only testified to knowledge that Steven Leff had a dispute involving an unspecified amount of money with his wife's grandfather, and Defendant testified that his knowledge about the ex-stripper was based purely on rumors. Defendant testified to knowing that Steven Leff's suspension resulted from issues involving the handling of client money but did not testify that he knew of any misappropriation. Plaintiff's generalized reference to "suspicious activities" is neither explained nor supported by any evidence, and Plaintiff's reference to Defendant's knowledge of other unspecified "fraudulent activities" that he would have uncovered if he had not "turned a blind eye" to Steven Leff's actions are undefined, wholly conclusory and based on speculation.

undertook a duty to ensure that escrowed funds reached their proper destination, either before or after they were misappropriated, or to ensure that the funds were not improperly commingled, because, as already discussed, the proffered evidence indicates merely that Plaintiff asked Defendant for legal advice concerning title clearing and that Defendant sought an exemption from mortgage taxes in connection with one of the transactions at issue in this case, and there is no evidence that any of these responsibilities had anything to do with ensuring the proper disbursement of funds. Moreover, there is no evidence that Defendant had any control or responsibility over the escrow accounts at issue.

Plaintiff's fraud and negligence claims fail because no rational factfinder could conclude that Defendant had a duty to disclose the omissions or that Defendant's silence was the proximate cause of Steven Leff's defalcation. As to Plaintiff's breach of fiduciary duty and attorney malpractice claims, there is no genuine issue for trial as to whether Defendant ever undertook any duty to ensure the proper disbursal of the funds, either in his role as a "settlement agent" or in his role as "general counsel," and Plaintiff cites no legal authority for its proposition that Defendant's general counsel position automatically rendered him an "officer" of NSA,[6] nor for the proposition that a corporate fiduciary's officers are themselves liable as fiduciaries simply by reason of officer status.

The Court has considered thoroughly all of Plaintiff's remaining arguments and

---

[6] The only case cited by Plaintiff, China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash, No. 96 CIV. 9663 (PKL), 1999 WL 126921, *6 (S.D.N.Y. Mar. 9, 1999), merely provides that a corporation's general counsel is an "officer" for purposes of service on the corporation under Rule 4(h)(1) of the Federal Rules of Civil Procedure. To the extent that China Mariners could be read to hold that an employee's mere status as a "general counsel" automatically renders him an "officer" for all other purposes, the Court respectfully disagrees.

finds them to be without merit. Accordingly, and for the aforementioned reasons, Defendant's motion for summary judgment is granted in its entirety.

*Request for Sanctions*

The Court has also considered thoroughly the parties' letters in connection with Defendant's request for sanctions on the basis of Plaintiff's allegedly knowing violation of an earlier protective order. Defendant's proffers are insufficient to warrant a conclusion that Plaintiff intended to violate the protective order. Accordingly, no sanctions are warranted.

CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment is granted in its entirety and Defendant's request for sanctions is denied.

The only remaining Defendant is Rachel Leff, who, the Court understands, is still in bankruptcy proceedings. Accordingly, Plaintiff is ordered to show cause, by means of a written submission filed no later than **June 15, 2009**, as to why its case should not be dismissed as to Rachel Leff without prejudice.

The Clerk of Court is respectfully requested to terminate Docket Entry No. 39 and to

terminate Defendant Richard Leff as a defendant in this case.

SO ORDERED.

Dated: New York, New York
June 8, 2009

_____
LAURA TAYLOR SWAIN
United States District Judge